# Shank and Wife *versus* Simpson.

1.   It is error for the Court to direct a verdict for the defendant if there be anything in the testimony admitted or in the offers of evidence rejected, that would have presented a material question of fact for the jury; but it is not error, if the plaintiff's case as exhibited by the testimony and the rejected offers of evidence be fatally deficient, either in the requisite kind or degree of proof.

2.   A., not indebted nor about to embark in a hazardous business, confessed judgment to B., to be held by him and used only in case of the financial embarrassment of A., to make sale of A.'s real estate at sheriff's sale for the benefit of A.'s wife, A. became financially embarrassed.   B. sold A 's real estate at sheriff's sale on this judgment, and became the purchaser ; he afterward sold it to C.   In an action by A. and wife, in right of wife against B., to recover the amount of the purchase money paid him by C.  *Held*, that there could not be a recovery, for the arrangement between A. and B. was a device to hinder, delay and defraud the creditors, which A. could not set up to defeat the claim of B.

April 26th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Clinton county :* Of January Term, 1885, No. 476.

Assumpsit by David Shank and Margaret A. Shank, his wife, in right of the wife against William A. Simpson, to recover the price of certain real estate sold by the defendant to Mrs. Candor. Pleas, non assumpsit, payment, set off with leave.

The facts of the case as they appeared on the trial before MAYER, P. J., are sufficiently shown in the following opinion filed in support of finding instructions given on the trial to find a verdict for the defendant.

On the 23d day of July, 1866, David Shank gave his judgment note to W. A. Simpson, the defendant, payable one day after date, for the sum of $3,900. On the 19th day of February, 1867, judgment was entered on said note in the Court of Common Pleas of this County to No. 22, May Term, 1867.

On the 23d day of March, 1869, a writ of *fieri facias* was issued on the judgment, and the real estate of David Shank, the defendant in the judgment, was levied upon. This real estate consisted of a lot of ground situate in the city of Lock Haven, upon which were erected a dwelling house and other buildings.

On the 26th day of April, 1869, the sheriff sold said real estate to William A. Simpson for the sum of $2,500, to whom a deed was executed and delivered by the sheriff on the 3d day of August, 1869. At the time of the levy and sale by the sheriff, David Shank was insolvent and had filed his petition in bankruptcy. On the 14th day of May, 1880, W. A. Simpson sold the real estate purchased by him at sheriff's sale, to Mrs. Candor for the sum of $1,800.

This suit has been brought by David Shank and Margaret A., his wife, for the use of said Margaret, to enforce an agreement alleged to have been made by David Shank with William A. Simpson, at the time said judgment note was given. The narr filed in the case sets forth as follows: " that on or about the 23d day of July, 1866, William A. Simpson, the defendant, and brother of Margaret, proposed to said David that in order that a home might be secured to her, the said Margaret, and her children, in case misfortune should occur in the business of said David, that he execute to him a judgment note in such sum as would probably cover the amount such property would bring at a judicial sale, and said Shank thereupon executed and delivered to said defendant a judgment note in the sum of three thousand and nine hundred dollars, upon the specific agreement that said Simpson would hold the judgment for the use of said Margaret, and if said above described real estate should be sold, then said Simpson would buy the same, and hold it for the same use and purposes for which he held the judgment."

David Shank in his testimony, says: " The purpose of that note was, Mr. Simpson thought that something might happen

4 AMERMAN—14

[Shank and Wife *v.* Simpson.]

me, that I might lose my property. He asked me if I would give him a judgment note on my property, and says he, if you do give the note I will sell the house on it, and then I will convey the title over to Margaret, and you have the title for it, and a title nobody can dispute, and the best way you can convey that house to Margaret, that is my wife. Then I signed the note, and the agreement was, that he was to convey that title over to my wife."

Q. Was there any other consideration? A. All the consideration..

On his cross-examination he says:

Q. When was Mr. Simpson to enter up this judgment that you gave him? A. No specified time when he was to enter it.

Q. There was no agreement that he was to hold this until you became embarrassed, in embarrassed circumstances? A. No agreement about that.

Q. You did not testify before the arbitrators then, that Mr. Simpson was to hold this until you became embarrassed, and that he entered it up before you were embarrassed and broke you up? A. I said that.

Q. Did you testify before the arbitrators in another case of David Shank against W. A. Simpson, that Mr. Simpson entered this judgment before you became embarrassed and broke you up by doing so, and that his agreement was to hold it until you became embarrassed financially? A. The agreement was that.

Q. When was he to sell the property on it? A. Why, if I failed in business, anything went wrong with me, he was to sell the property on that judgment, and I was in good circumstances when I gave him the judgment, I owed nobody.

Q. You say he was only to sell it providing you became embarrassed? A. Well, he said something might happen you in your business; said something might happen you, Dave.

Q. Were there any judgments against you at the time that he sold the property on his judgment? A. Yes, sir, there were judgments at that time.

Q. Was this property sold on his judgment after you had filed your petition in bankruptcy? A. Yes, sir. I filed my petition in bankruptcy before the house was sold.

Q. Did you testify that you were to notify him if you should become embarrassed, and he would hold it until then, and that you never notified him, and that he entered it up, and broke you by entering it? A. Yes, sir, I said that.

Q. Was your testimony before the arbitrators in that respect true? A. Yes, sir, that was true.

From this evidence of the plaintiff himself, it is clear and unmistakable that the express purpose for which this judgment

[Shank and Wife v. Simpson.]

note was given was to hinder, delay and defraud the creditors of David Shank. The plaintiff swears the agreement was that the judgment note was to be held until he became embarrassed, and then to be entered and the property sold so as to secure it for his wife and family. That such an agreement is in itself a fraud and cannot be enforced is fully settled by the authorities. Nor is it material that the defendant was not indebted at the time the judgment note was given, if when given, the purpose of it was as stated by plaintiff, that defendant was to hold it and use it in case of financial embarrassment. Such a device cannot be resorted to, and the Courts called upon to carry it into execution.

As was said by Justice Coulter in Serfoss v. Fisher, 10 Barr, 185, "Of whatever seeming the whited device may be, if it is contrived for the purpose of defeating or hindering creditors, it is void. Otherwise, the statute itself would become the victim of the very devices and cheats it was intended to prevent. In such cases the character of the device is referred to the time when it is used for the purpose of fraud; and if then false and feigned, it is fully within the interdict of the statute and the provisions of the common law. For that which is beautiful and true in its origin, may become foul by subsequent events, either performed by principals, agents or instruments."

That such an agreement as is proven here can have no legal efficacy, and cannot be made the foundation of a right in the wife of David Shank is fully sustained by the following authorities:

In Williams, Administratrix, v. Williams, 10 Casey, 312, it was held that, "in a suit upon a mortgage against the administratrix of the mortgage, the latter will not be permitted to set up as a defence, that the mortgage was given with the fraudulent intent of conveying the property from creditors, in case of embarrassment of the parties to it." In that case, which was similar in its facts to the present one, it was offered to be proved "that the mortgage was without consideration, and was taken by the plaintiff from his two sons soon after their attaining the age of twenty-one years, with the understanding that it should not be collected unless they failed in business." Vide page 312. Justice Thompson in delivering the opinion of the Court says: "If the transaction was covinous, and the intent was to cover the property from creditors, in case of embarrassment of either party to it, neither one nor the other would set up the fraud, as between themselves, to defeat the other of any claim under it."

In Murphy v. Hubert, 4 Harris, 57, the Supreme Court said: "If there be a point settled on reason and authority it is that a deed intended to defraud creditors, although void as against

[Shank and Wife *v.* Simpson ]

creditors, yet is valid as against the grantor and those for whose benefit it is designed, whether it be the grantor himself, his child, or children or a stranger.    That a trust cannot be enforced where it is designed to effect a fraud on creditors, is settled by authority.    The cases, without exception, decide that such a trust is void in itself, and therefore incapable of being made the foundation of a right in others."

In Blystone *v.* Blystone, 1 P. F. S., 273, which was a judgment confessed, and opened to let the defendant into a defence, the court said : " If parties concoct a scheme to defraud others, and resort to a judgment to effect their object, both having in view the same thing, there is no fraud between them assuredly of which either can complain or call on a court for relief.    Courts will not move to change the condition of the parties any more readily in such case than they would to enforce an executory contract, which as a general rule, they will not do."    To the same effect is Gill *v.* Harvey, 14 Norris, 388 : " If a transaction is covinous, and the intent was to cover the property from creditors, in case of embarrassment of either party to it, neither one nor the other can set up the fraud as between themselves to defeat the other of any claim under it.    A party to such transaction cannot give in evidence his own fraud in defence against his own act, whether it be an absolute deed, or a mortgage, or a confession of judgment, and no matter how it may be mingled with other arrangements or agreements between the parties."    Controlled by these authorities we directed the jury to find a verdict for defendant, being satisfied that plaintiff by his own testimony proved such an agreement as was incapable of being enforced.    It may be said of plaintiff as was said by one of old " My own mouth shall condemn me."

During the trial Margaret Shank being on the stand the plaintiff made the following offer : Plaintiff offers to prove by this and other witnesses, that shortly after the sale by the sheriff of the property described in the deed offered in evidence, she, witness, went to Mr. Simpson, at the instance of Mr. Shank, to procure a conveyance of the property to her ; that she suggested to Mr. Simpson the conveyance, and also that she was afraid if the deed were made to her, and she would sign papers to get money to start Mr. Shank in business, she might lose the property.    He replied he thought better to not convey it now, she could live in it all the same. That subsequently in the spring of 1880, witness with her husband and daughter proposed to go to St. Paul, Minn., where they had three sons then living, and before starting west called upon Mr. Simpson with reference to the property. It was proposed to rent it.    To this objection was made and

Mr. Simpson proposed to sell it, when witness and her husband went to see Joseph Candor for the purpose of making sale of the property to him ; that a sale was consummated and the property afterwards conveyed to the wife of said Joseph Candor, but not until after witness had gone west; that when at the cars and about to start on the journey west Mr. Simpson said to witness that he would send her the money for the house to St. Paul to her.

For the purpose of showing an acknowledgment of the trust and establishing in conection with the testimony of David Shank the trust alleged in the narr.

Defendant objected, objection was sustained and bill sealed for the plaintiff.   (First assignment of error.)

The plaintiff, the same witness being on the stand, then made the following offer :   Plaintiff proposes to renew the offer just overruled, to be followed by evidence that at the time the note or single bill already in evidence was given, plaintiff was not nor about to, embark in any hazardous business, nor did he anticipate any indebtedness, but the purpose was to make a provision for his wife.

Defendant made the following objections to the offer :

1. The plaintiff has already proved by David Shank, one of the plaintiffs, that the judgment note in question was given for a fraudalent purpose.

2. It already appears from plaintiff's testimony that the judgment note in question was entered in fraud of defendant, David Shank's, creditors.

3. It has already been shown by plaintiff that David Shank, at the time of the sheriff's sale, was largely indebted and had applied for the benefit of the United States Bankrupt law.

4. From the whole testimony now in, and the present offer, it fully appears that the sheriff's sale, under which plaintiff claims, was fraudulent and void as to the creditors of David Shank, and that neither David Shank nor his wife Margaret, can claim anything thereunder, but the trust, if any, is for the assignee in bankruptcy of David Shank.

5. The plaintiff has already shown by the records and papers offered in evidence that William A. Simpson, the defendant, paid in money the bid for the real estate in question, and holds the same free from any trust whatever, and therefore there was no consideration for the alleged promise to Margaret Shank contained in the last part of the offer.

6. Under the testimony now in and that offered, the judgment and the title acquired thereunder are valid between the parties to the judgment, and also as to Margaret Shank, wife of the defendant.

7. The plaintiff attempts by the evidence now in and the

present offer to establish a parol trust in land in violation of the Act relating to parol trusts.

8. Because it contradicts the evidence already in.

9. It is insufficient because it does not offer to prove that David Shank was not indebted at the time the judgment of W. A. Simpson was entered and at the time the property was sold by the sheriff.

10. It contradicts the statement of special matter furnished us by plaintiffs of what they propose to offer in evidence at this trial.

Objections were sustained and a bill sealed for the plaintiff. (Second assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ, assigning for error the charge of the court directing a verdict for the defendant, and the rejection of the above offers of evidence.

*C. S. McCormick* (*C. C. Furst* with him), for plaintiff in error.—The law permits a husband to settle property on his wife, and the settlement will be good, though he may afterwards become insolvent. The question, and for the jury, in such case, will not be, are subsequent creditors unpaid, but was the purpose of such voluntary settlement to defraud them: Harlan *v.* Maglaughlin, 9 Norris, 299; Monroe *v.* Smith, 29 P. F. S., 461; Snyder *v.* Christ, 3 Wright, 507; Byrod's Appeal, 7 Casey, 242; Zuver *v.* Clark, 8 Out., 226. In Harlan *v.* Maglaughlin, *supra* 298, it is said: If he contemplates future indebtedness he must for a like reason provide for it, but he must not provide for what he does not anticipate and for what may never occur.

*W. C. Kress* (*Charles Corss* with him), for defendant in error.—But whatever may have been the character of the judgment in its incipiency, whether then tainted with fraud or not, it became fraudulent when used to defeat creditors whose claims had come into being after the judgment was given and before the sheriff's sale. The character of the judgment in such a case is to be referred to the time when some claim is made under it: Serfoss *v.* Fisher, 10 Barr., 184; Williams *v.* Williams, 10 Casey, 314; Gill *v.* Henry, 14 Norris, 393; Rowand *v.* Finney, 15 Id., 192; Salter *v.* Bird, 14 W. N. C., 154.

Mr. Justice STERRETT delivered the opinion of the court, October 4th, 1886.

If there is anything in the testimony admitted or in the offers of evidence rejected by the court that would have presented a material question of fact for the jury, it follows the

learned judge erred in withdrawing the case from their consideration and directing a verdict for the defendant; but, on the other hand, if the plaintiff's case as exhibited by the testimony and the rejected offers of evidence, is fatally deficient either in the requisite kind or degree of proof, there was, of course, no error in either of the rulings complained of.

It appears from the record evidence admitted by the court, that in July 1866, David Shank, husband of the beneficial plaintiff gave his judgment note to defendant for $3,900, at one day after date, on which judgment was entered about six months thereafter.

By virtue of an execution issued thereon in March, 1869, Shank's real estate was levied on and sold to defendant for $2,500, which appears to have been paid by him and subsequently distributed by an Auditor.

In May 1880, defendant conveyed same property to Mrs. Candor for $1,800. We thus have on the face of the transaction, a judgment, presumptively *bona fide* and for a full consideration, a judicial sale of real estate to defendant, and subsequently a private sale and conveyance of the same by him to Mrs. Candor. Instead of even tending to show that either of the plaintiffs has any interest in the property so sold, or in the proceeds thereof, the record evidence referred to proved the contrary, and thus whatever interest either of them may have had in the land was regularly divested by judicial sale. The substance however of plaintiff's contention is that the judgment did not represent any indebtedness by Shank to Simpson, but was given for the sole benefit of Mrs. Shank to be held in trust for her by Simpson, and when the property on which the judgment was a lien, was sold, it was purchased and afterwards disposed of at her instance and for her benefit; that the object of thus giving the judgment was to make suitable provision for Mrs. Shank at a time when her husband was not indebted nor about to embark in any hazardous business, and therefore not in fraud of creditors. If plaintiffs had introduced or offered testimony that would have warranted the jury in finding the truth of their contention, they might have some reason to complain of the adverse rulings of the court; but they did neither, and as the learned president of the Common Pleas has shown in his charge, it would have been error to have submitted the case to the jury on any evidence that was admitted or offered. In any view that can be taken of the evidence it would not have warranted the submission of plaintiffs' case to the jury. Upon the testimony introduced in connection with that embraced in the offers of evidence rejected by the court, the case of the plaintiffs is fatally defective both in the kind and degree of proof

that was necessary to sustain their contention. There was, therefore, no error in giving binding instructions to the jury to find for the defendant.

Judgment affirmed.